IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ORVILLE RODRIGUEZ,           :
        Petitioner,           :
                    :    1:15-cv-1798
    v.           :
                    :    Hon. John E. Jones III
CAPT. SPAULDING,           :
        Respondent.           :

## MEMORANDUM

### May 24, 2017

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Orville Rodriguez ("Rodriguez"), a federal inmate housed at the Federal Correctional Institution at Allenwood ("FCI-Allenwood"), White Deer, Pennsylvania. He alleges that his Fifth and Eighth Amendment rights were violated during two separate disciplinary proceedings disposing of Incident Reports 2688840 and 2693026. He is seeking expungement of the incident reports, removal of sanctions, and restoration of Good Conduct Time. (Doc. 1, p. 8).

The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I.  BACKGROUND

The Federal Bureau of Prisons ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011).

These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for a hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.3.

### A.    Incident Report 2688849

On March 3, 2015, while incarcerated at FCI-Allenwood, Rodriguez received an incident report, 2688849, charging him with "Use of the telephone for abuses other than criminal activity," in violation of Prohibited Act Code 397. (Doc. 8-1, p. 12). The incident is described as follows: "Inmate Rodriguez,

Orville register number 17394-055 made a telephone call to phone number 716-768-1232 from phone station 5803 at 2:58 PM in unit 1B/AB. Inmate Rodriguez had this individual use their cell phone and conduct a three way phone call to several people, when the other parties answered the cell phone inmate Rodriguez was put on speaker phone and he had conversations with the individuals on the cell phone. This telephone called [sic] was monitored at 4:50 PM 3/2/15." (*Id.*) Shortly thereafter, the incident was reinvestigated because it was incorrectly processed as a Code 397. (*Id.* at 13). On March 6, 2015, Rodriguez received a second copy of the incident report with the proper code violation, Code 297, "Use of telephone for abuses other than criminal activity." (*Id.*)

During the March 9, 2015, UDC review, Rodriguez commented, "I did not know I couldn't do this. It was out of the urgency to find out about my brother. I did not speak directly with the third person, my brother." (*Id.*) The UDC referred the matter for further hearing and recommended loss of good conduct time, loss of phone privileges and imposition of a monetary fine. (*Id.* at 12). Rodriguez acknowledged being advised of his rights and declined the offer of staff representation and the option to call witnesses at the DHO hearing. (*Id.* at 15-16).

The disciplinary hearing commenced on March 12, 2015. (*Id.* at 17). The DHO advised Rodriguez of his rights; Rodriquez declined staff representation, chose not to call witnesses, presented no documentary evidence, and denied the

charges against him.  (*Id.*)  The DHO noted no procedural irregularities, except the delay caused by the improper code violation being listed in the initial incident report.  (*Id.*)  Rodriquez stated, "I have a brother who had a seizure and is in a medically induced coma."  "The report is true."  (*Id.*)  Upon further questioning, "Inmate Rodriguez . . . admitted the charge.  He elaborated upon his plea by stating, the report is true."  (*Id.* at 18).

The DHO "believed the information provided by the staff member involved in this case, as they derived no known benefit by providing false information." (*Id.*)  He concluded, based upon the evidence cited in the incident report and Rodriguez's admission, that Rodriguez committed the prohibited act of Use of the telephone for abuses other than criminal.  In imposing sanctions including, *inter alia*, disallowance of twenty-seven days of good conduct time, the DHO stated:

> Rodriguez's use of his telephone privileges detracted from the intent of the Federal Bureau of Prison's telephone policy.  His making of a three-way phone call threatened the security of the institution by bypassing the inmate telephone procedures established at FCI-Allenwood.  Accordingly, the Disallowance of Good Conduct Time is sanctioned to punish Rodriguez for his behavior while the Loss of Privileges, (Phone and Visit) and Disciplinary Segregation (Suspend 180 Days pending clear conduct) is sanctioned in an effort to deter him from it in the future.  The DHO finds the charge for code 297 to warrant the Disallowance of Good Conduct Time based on the offense being a highly aggravated offense which greatly jeopardized the safety of the staff and inmates.

(*Id.* at 19).

## B.     Incident Report 2693026

The following day, March 13, 2015, Rodriguez received a second incident report, 2693026, charging him with violations of Prohibited Act Codes 397 and 306, Use of telephone for abuses other than criminal activity which do not circumvent telephone monitoring or use of the telephone, and Refusing programming.  (Doc. 8-1, p. 30).  The staff member described the following events:

> This staff member was monitoring phone calls on this date in the phone monitoring room when a phone call made by Inmate Rodriguez on 03/13/2015 at 7:05 AM to his spouse was heard.  Inmate Rodriguez had been sanctioned by DHO on 03/12/2015 and had received the sanction of loss of phone and visits for 6 months.  The phone call made was not abiding by the sanctions provided him the day prior.  He was also asking his spouse to come visit him this weekend during the phone call and said he would call her as often as he could until his phone was shut off.

(*Id.*)  The investigating officer advised him of his rights and Rodriguez stated "I didn't know the sanction started right away.  I though[t] I had 24 hours." (*Id.* at 31).  The matter was referred to the UDC.  (*Id.*)

During his March 16, 2015, UDC review, Rodriguez stated, "My sanction didn't go into effect until the afternoon when they gave me the disposition.  I was not informed I could not use the phone."  (*Id.*)  The UDC referred the matter to the DHO.  (*Id.*)  On the discipline hearing notice, Rodriguez requested that "Mrs. Dewald" represent him; he declined the offer to call witnesses.  (*Id.* at 33).

At the March 25, 2015 hearing, the DHO informed Rodriguez that Mrs. Dewald either declined or was unavailable and gave him the option to continue the hearing to obtain another staff representative. (*Id.* at 34). Rodriquez apparently chose to proceed without a staff representative but, at the conclusion of the hearing, requested "Mr. Fogelman" as a staff representative. (*Id.*) The DHO informed him that the hearing concluded and that any request for staff representation should have been made at the beginning of the hearing. (*Id.*)

In arriving at a finding of guilt, the DHO considered the following statements made by Rodriguez: "I was informed that if my phone wasn't turned off that I could use it." "The DHO did tell me I was on phone restriction at my DHO hearing." (*Id.*) The DHO also considered the incident report, two Monitored/Recorded telephone calls placed on 3/13/15 at 7:05 a.m. and 11:14 a.m., and statements made by Rodriguez during the phone calls that allude to his being on phone restriction. (*Id.* at 35). In contravention of the sanctions imposed the prior day, Rodriguez was asking his spouse to come visit him and indicated that he would call her as often as he could until his phone was turned off. (*Id.*) Also, the DHO believed the information provided in the incident report by the staff member as he derived no known benefit by providing false information. He also found "the charge for code 397 to be supported in this case based upon the greater weight of evidence cited in this report as well as the actions demonstrated by the inmate in

placing a phone call after being instructed by the DHO at the conclusion of his DHO hearing on 3/12/15 not to do so and his sanctions were effective immediately following the conclusion of his DHO hearing." (*Id.*)  With regard to code 306, he considered the charge redundant and expunged it from the report.  (*Id.*)

He stated the following with regard to the imposition of sanctions for the code 397 violation:

> Rodriguez' [sic] use of his telephone privileges detracted from the intent of the Federal Bureau of Prison's [sic] telephone policy.  His utilizing the inmate telephone system while on phone restrictions bypassed the inmate telephone monitoring procedures established at FCI Allenwood.  Accordingly, Disciplinary Segregation, the Disallowance of Good Conduct Time and the Forfeiture of Non Vested Good Conduct Time is [sic] sanctioned to punish Rodriguez for his behavior while the loss of privileges (Phone and Visit) is sanctioned in an effort to deter him from it in the future.  The DHO finds the charge for code 397 to warrant the Forfeiture of Non Vested Good Conduct Time in addition to the Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardized the safety of staff and inmates.
>
> The DHO is imposing an additional Disciplinary Segregation which was previously suspended pending clear conduct.  His failure to maintain clear conduct is the reason for this imposition.

(*Id.* at 36).

## II.  **DISCUSSION**

Rodriguez's claim, that his due process rights were violated in the context of the disciplinary hearing process, and that these violations resulted in a loss of good conduct time, is properly the subject of this habeas petition because it directly

impacts the duration of his confinement. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Federal inmates possess a liberty interest in good conduct time. See *Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate is illiterate, 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564.

## A.    Incident Report 2688849

Rodriguez contends that he did not receive adequate notice of the charges contained in Incident Report 2688849,  He argues that "[o]n 3-2-2015 Petitioner was cited with Incident Report No. 2688849 in violation of Code 397, which was "Amended" to Code 297, without 'notice' or 'signature' of the person who

amended the report." (Doc. 1, p. 7). This argument lacks merit. First, the record indicates that he received a copy of the incident report with the proper code on the evening of March 6, 2015. (Doc. 8-1, p. 13). Regardless, as long as an inmate has notice of the facts underlying the charge of which he is found guilty, as is the case here, it is does not matter that he is found guilty of a greater charge. *See Luna v. Zickefoose*, No. 1:14-CV-1060, 2015 WL 463270 *5 (M.D. Pa. Feb. 4, 2015), citing *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir.2003); *Borker v. Baltazar*, Civil No. 14–0197, 2014 WL 5020602, *3 (M.D. Pa. Oct. 8, 2014).

### B.    Incident Report 2693026

Rodriguez alleges that the DHO violated the Eighth Amendment in finding him guilty of the Code 397 charge in Incident Report 2693026, and sanctioning him without "fair notice" for an "unlisted violation of policies that were not covered or posted." (Doc. 1, p. 7). "On 3-15-2015 [he] was cited with Incident Report 2693026 for violation of Code 397. [He] avers that there was no posted policies or effective date of when [his] sanctions for the prohibited act [he] was to serve begin. Only after [he] was served a copy of the DHO Report was he put on 'notice' of the effective date the sanction was to begin." (*Id.*)

This is essentially a challenge to the sufficiency of the evidence relied on by the DHO. The decision of the DHO will be upheld if there is "some evidence" to support the decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); s*ee also*

*Young*, 926 at 1402-03 (applying *Hill* standard to federal prisoner due process

challenge to prison disciplinary proceedings). The determination of whether the

standard is satisfied "does not require examination of the entire record,

independent assessment of the credibility of witnesses, or weighing of the

evidence. Instead, the relevant question is whether there is any evidence in the

record that could support the conclusion reached by the disciplinary board." *Id.* at

455. Under *Hill*, judicial review of a prison disciplinary decision is limited to

ensuring that the prisoner was afforded certain procedures, the action against him

was not arbitrary, and that the ultimate decision has some evidentiary support. *Id.*

at 457; *see also* 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be based

upon at least some facts and, if there is conflicting evidence, to be based on the

greater weight of the evidence).

In arriving at a finding of guilt, the DHO considered the information

provided by the staff member in the incident report. He also considered

Rodriguez's admission that "The DHO did tell me I was on phone restriction at my

DHO hearing" that was held the prior day. (Doc. 8-1, p. 34). Additionally, the

DHO took into account two monitored/recorded telephone calls during which

Rodriguez discussed with his spouse the fact that he was sanctioned the day before

with loss of phone privileges for six months. (*Id.* at 35). Despite Rodriguez's

argument to the contrary, the record indicates that the DHO's conclusion that

Rodriguez committed Prohibited Act Code 397 of use of the telephone for abuses other than criminal activity has some evidentiary support.

As concerns the severity of sanctions argument, the sanctions permitted upon a finding of guilt of a "High Severity Level Prohibited Acts" offense include, *inter alia*, forfeit and/or withhold earned statutory good conduct time or up to 50% or up to 60 days, whichever is less, disallowance of between 25% and 50% of good conduct time credit available for a year, up to six months of disciplinary segregation, and loss of privileges. 28 C.F.R. § 541.3. The sanctions imposed on Rodriguez were within the limits prescribed in this regulation.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense. *See Rummel v. Estelle*, 445 U.S. 263, 271–74 (1980)." *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006). Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The penalties imposed, loss of good conduct time, loss of privileges, and disciplinary segregation, do not work an "atypical and significant hardship" on Rodriguez and do not serve to extend his confinement beyond the expected parameters of the his sentence. *Sandin*, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

### III. <u>CONCLUSION</u>

Based on the foregoing, the petition for writ of habeas corpus will be denied.

A separate Order will enter.